[No. 23603. Department One. August 23, 1932.]

Charles M. Dunn, *as Administrator, Appellant,* v. T. W. Buschmann, *Respondent.*[1]

[1]Reported in 13 P. (2d) 69.

*Reynolds, Ballinger, Hutson & Boldt,* for appellant.

*J. Speed Smith* and *Henry Elliott, Jr.,* for respondent.

PARKER, J.—The plaintiff, Dunn, as administrator of the estate of his deceased wife, seeks for himself and their infant daughter recovery of damages for the death of his wife, which, he alleges, was caused by the negligence of the defendant, Dr. Buschmann, while she was under his care as a physician shortly following her giving birth to their infant daughter. A trial in the superior court for King county, sitting with a jury, resulted in verdict and judgment in favor of the defendant, from which the plaintiff has appealed to this court.

In pursuance of employment by the plaintiff, the defendant undertook to professionally attend Mrs. Dunn at the birth of their child, and thereafter during her resulting illness. Mrs. Dunn was timely taken to the hospital, where the child was successfully delivered on November 18, 1930, the defendant attending Mrs. Dunn. She remained at the hospital until December 2, 1930, when she went to her home, she then being regarded as being sufficiently recovered to do so.

Soon after arriving at her home, Mrs. Dunn commenced bleeding much more than normal at such a time following the birth of her child. This continued with increasing profusion for three days, at the end of which period the defendant next saw her at her home and discovered her to be in an alarming condition as the result of her bleeding. He then caused her to be removed to the hospital, where her condition was, apparently by every available means known to medical

science, sought to be remedied, but without avail. She died the following day, December 6, 1930.

The particular claim relied upon for recovery against the defendant is that he negligently failed to visit Mrs. Dunn in response to several telephone requests therefor, advising him of her profuse bleeding during the three days she was at her home; and that had he visited her there and timely acted as her condition required, her life would probably have been saved. There was substantial evidence supporting this theory of recovery; on the other hand, the defendant testified, in substance, that he was at no time during those three days advised of Mrs. Dunn's bleeding, and that he did not during any of that period have any cause to know or suspect that she was so bleeding or in a condition requiring his personal attention, and that it was only upon his visiting her at the end of that period that he discovered her alarming condition.

The only claim of error here relied upon for reversal of the judgment and the awarding to the plaintiff of a new trial, is that the trial court erred to his prejudice in admitting in evidence, over his counsel's objection, a certain portion of the hospital record made by the defendant himself relating to Mrs. Dunn's condition during the three days she was at her home, and his conclusion touching the cause of her not receiving his personal attention until the end of that three-day period.

There was offered in evidence in behalf of the defendant, as a single exhibit, records of the hospital consisting of nine sheets, each made by either the defendant or the attending nurse, covering the three days Mrs. Dunn was at her home and the following two days she was at the hospital, immediately preceding her death. These sheets do not constitute one document, but different documents, and there was no special reason why

they should all be introduced as a single document. Counsel for the plaintiff objected to the introduction of one of these documents, complete within itself, made and signed by the defendant on December 5, 1930, the day that Mrs. Dunn was returned to the hospital, and particularly that part thereof reading as follows:

"Past three days has had profuse hemorrhages from uterus—this continued for three days without notification of doctor. Due to fact that patient was cared for by many friends who attended her for short periods, and none of them were aware of the amount of blood lost."

■ The admission in evidence of the records of a hospital relating to injuries or sickness of a patient treated therein, made by attending physicians or nurses during such treatment, has been a much discussed subject in the decisions of the courts of this country. There may be found therein considerable seeming conflict of opinion as to whether or not such records are admissible at all, and as to the circumstances under which they are admissible, when held admissible. See note in 75 A. L. R. 378. Our decision in *Toole v. Franklin Inv. Co.,* 158 Wash. 696, 291 Pac. 1101, held such a record not admissible, because its admission in that case would violate the hearsay rule.

Now, let us analyze the hospital record statements, above quoted, made by the defendant himself, which were admitted in evidence in his own behalf over the objection of counsel for the plaintiff. The first statement is: "Past three days [Mrs. Dunn] has had profuse hemorrhages." This, manifestly, was unknown to the defendant except as he learned it from hearsay when he called upon Mrs. Dunn, not having seen her during the prior three-day period.

The second statement is: "This continued for three days without notification of doctor." This is, mani-

festly, a self-serving statement made by the defendant; that is, as to the failure of his being notified. The other portion, of course, was hearsay. This second statement was, manifestly, intended to negative the defendant's fault in not taking notice of Mrs. Dunn's critical condition prior to the end of the three-day period when he first learned of her critical condition.

The third statement is, that this want of notice was "due to fact that patient was cared for by many friends who attended her for short periods, and none of them were aware of amount of blood lost." This also, manifestly, was unknown to the defendant except as he learned it from hearsay at the time he called upon Mrs. Dunn at the end of the three-day period. It is even worse than mere hearsay. It is a mere conclusion based wholly upon hearsay. It seems plain to us that the record statements are hearsay and self-serving, and for these reasons were erroneously admitted in evidence.

■ Contention is made in behalf of the defendant that counsel for the plaintiff did not make his objecttion to the introduction of this portion of the hospital record sufficiently specific to call for its consideration upon this appeal. When counsel for the defendant offered in evidence exhibit 2, consisting of nine sheets of purported hospital records of Mrs. Dunn's case, objection was made by counsel for the plaintiff to the introduction of the top or first sheet thereof, which was a separate sheet in defendant's own handwriting, except the printed portions thereof, containing the statements above quoted, and some other matter which, it seems plain to us, is of no moment in our present inquiry.

The objection to the introduction in evidence of this part of that record was, in its inception and in the discussion thereof, somewhat involved; but we think, on the whole, that objection and discussion rendered it

plain to the trial court that the particular language of the record above quoted was relied upon by counsel for the plaintiff as being objectionable. This was rendered rather more certain, however, when the court overruled the objection and permitted counsel for the defendant to read that particular portion of the language of the record objected to to the jury; which was immediately followed by counsel for the plaintiff moving to strike that read language from the evidence, which motion was denied. We think there is no substantial ground for holding that the objection was not sufficiently specific.

It is contended in behalf of the defendant that the admission in evidence of this quoted portion of the hospital record was without prejudice to the plaintiff. About all we can make out of this contention is, that there was no such prejudice because the facts stated in the record were testified to by the defendant or other witnesses, more particularly because the defendant testified that he was not notified of Mrs. Dunn's bleeding condition. Manifestly, this record was introduced in behalf of the defendant to corroborate and support his own testimony touching his alleged neglect of Mrs. Dunn during the three-day period. It is a well-settled general rule that:

"Statements made by a witness to other persons are no exception to the hearsay rule. . . . Nor can evidence of what a witness has said out of court be received to fortify his testimony." 10 R. C. L. 960.

*State v. Braniff*, 105 Wash. 327, 177 Pac. 801.

In 2 Wigmore on Evidence (2nd ed.), § 1127, that learned author makes this very enlightening observation:

"When B is produced to swear to the contrary of what A has asserted on the stand, it cannot help us,

in deciding between them, to know that A has asserted the same thing many times previously. If that were an argument, then the witness who had repeated his story to the greatest number of people would be the most credible."

The prejudicial effect of the admission of this quoted portion of the hospital record was not only rendered plain by its being put before the jury in the manner we have noticed, but also by the fact that it went to the jury room as an exhibit, as we must presume, in compliance with Rule V of our Rules of Pleading, Procedure and Practice, found in 140 Wash. xxxix; while the oral testimony of the defendant went to the jury room only in the memory of the jurors.

We conclude that the judgment must be reversed, and the plaintiff awarded a new trial. It is so ordered. The cause is remanded to the superior court for further proceedings.

TOLMAN, C. J., MITCHELL, STEINERT, and HERMAN, JJ., concur.