Hitchcock, J.
The complainant introduces in evidence, in this case, a patent bearing date August 30, 1841, by which the land sought to be divided was granted to himself and the heirs of Nathaniel Massie; and upon this evidence he claims the legal title to the land, and that it is his right to have the same partitioned, as prayed for in the bill. There being no evidence to prove that this land had been previously granted by the government, it must be held that by this patent the legal title to a moiety of this survey was vested in the complainant as tenant in common with the heirs of Massie; or rather with the defendants, who claim under Massie, by deeds of warranty. Whether the proofs upon which this grant was made, were such as would have satisfied this court that the complainant was entitled to the land, is not a subject for our consideration, and can make no difference in the case. The *40 proper officers of the government were satisfied, and the patent was accordingly made. It conferred the legal title; and the complainant must have partition, unless some of the grounds of defense relied upon by the defendants can avail to defeat his claim.
The first ground of defense is that the defendants, and those under whom they claim, have been in possession of this land more than twenty-one years, under claim of title. That this possession has been open, notorious, exclusive, and adverse to the complainant, and therefore that his rights are barred by the statute of limitations. The proofs in the case show that survey No. 2,204, including the land in controversy, was made by Nathaniel Massic as early as September, 1792; and that the papers connected with it remained in hi3 hands until his death. One-half of the survey was assigned to him, and the other half to James Duke. According to the testimony before the coart, James Duke, in 1809, assigned his interest to the complainant, Alexander Duke. James Duke was a resident in Maryland, and seems never *to have been in the State of Ohio. Massie, in 1794, conveyed the one-half of this survey to Wickersham, and the other half to Miller, in 1799. Wiekersham and Miller took possession of their shares immediately after their respective purchases; and they, and those claiming under them, have been in possession ever since. Here, then, has been an adverse possession of one-half of this land, of fifty-three years; and of the other half, of forty-eight years.
But it is insisted by the complainant that neither James Duke, under whom he claims, nor himself, was ever within the State of Ohio until a short time before the patent was issued, and that therefore the statute can not operate against him. The adverse possession commenced during the lifetime of James Duke. If he died more than twenty-one years before the filing of the bill, the statute beginning to run at his death, would, if there were no other difficulty in the way, operate as a bar. But the fact is that statute did not begin to run until 1841. Until that time the title of the land remained in the government, and the principle is well Bettled that the statute of limitations does not run against the government. Although, then, these defendants have been so long in possession of this land, they can not be protected by this statute.
The next ground of defense is, that this is a stale claim, and that the complainant is barred by lapse of time. To this defense the same objection, perhaps, applies as to that last considered. It *41 was not until 1841 that the complainant could prosecute this claim, and since that period the lapse of time has not been so great that the court can with propriety say that the demand is a stale one, according to the common acceptation of the - term. In this case, 1 owever, it is not necessary to decide this point.
The last ground of defense relied upon by the defendant is, that Massie was justly entitled to, or had g,n equitable interest in, the whole survey. This is a point of more difficulty. If the fact be so,—if, in equity, Massie was invested with an equitable interest in the entire survey,—it must be a *good defense for these defendants. Had the complainant presented himself before a court of law in an action of ejectment, this defense could not have been made. In such case the legal title must prevail. But he is in a court of equity, and, although he has the legal title, yet if the defendants have a perfect equity in the land, he holds that legal title in trust for them. He is the trustee—they the cestuis que trust. And I apprehend that, under such circumstances, a trustee can not claim that the trust property shall be divided between himself and his cestuis que trust.
In order to sustain this point of defense the defendants insist that the circumstances disclosed in evidence are such that the court must presume that Alexander Duke transferred bis interest in this survey to Nathaniel Massie. If the circumstances are such as necessarily to raise such a presumption, there is no reason in law why it should not prevail. Assignments of warrants, entitling the holder to lands in the Virginia military district, have been presumed, both in the Supreme Court of the United States and of this state, 7 Wheat. 59 ; 8 Ohio, 518.
Whether such presumption can be made, must depend upon the circumstances disclosed in each particular case. The first circumstance relied upon by defendants in this case is, the great lapse of time. The testimony shows that Alexander Duke first became interested in this survey in 1809, by assignment from his father, James Duke. That he first came to Kentucky in the same year, and that since 1811 he has been a resident in Mason county. Mason county, although in the State of Kentucky, is yet in the vicinity of this land. It would seem strange, under such circumstances, that if the complainant had an inchoate interest in this land, he should not have set up a claim to it, or have made any effort to perfect his title for a period of thirty years. But we are *42 not prepared to say that an assingment of the certificate of survey can be presumed from, mere lapse of time.
What other circumstances are there in the case, taken in connection with the lapse of time, and those circumstances ^already named, which would lead us to the conclusion that there must have been an assignment, or- some other transfer, so as to vest the equity in Massie? This depends upon the testimony. This I do not propose to recapitulate, but merely to state facts as they-are disclosed by the proofs.
As before observed, this survey was made by Massie, in 1792. It was made in the name of Fowler and Wilson, claiming as assignees of parts of two different warrants, upon which the entry was based. It is shown that the plat and certificate of survey were delivered to Massie in 1793, and, from anything which appeal’s in the case, remained in his hands until the time of his death, which happened in 1813. Fowler transferred his interest to Massie, and Wilson his interest to James Duke. The date of this latter transfer does not appear. Wilson and James Duke wore brothers-in-law. Before the year 1800, this entire survey had been conveyed by Massie, as before stated, and the purchasers under him took possession. This possession by them, and those claiming under them, has continued and been uninterrupted to the present time.
Two of the brothers and a sister of Alexander Duke swear that their father gave to their brother Alexander all his interest in the survey, in the year 1809. Alexander, by his own oath, confirms this statement. This testimony was furnished to the land-office in Washington, to induce the issuing of the patent, which was finally issued in 1841. But it is now before this court as a part of the evidence in this case.
James'Duke had a brother named Basil Duke residing in Mason county; and, according to the testimony, t,he complainant, Alexander Duke, first came to Kentucky in 1809. It is stated by the witness, Francis Taylor, that in the summer of that year he was residing with his uncle Basil. It is reasonable to infer that the gift or transfer of this survey was made to him by his father previous to his journey to Ohio, and that one object of the journey was to look after this land. There is no evidence in the case that he had any claim to *any other land in Ohio; and both *43 Taylor and a son of the complainant testify that they never heard that ho had any other claim.
Taylor testifies that he placed a warrant in the hands of Massie for 2,666f- acres of land, granted to the representatives of TIonry Field, for services rendered by said Field; to be located, and that for the location Massie was to receive one-fourth. This was done in 1804. One tract of 1,500§ acres was located on the waters of the Little Miami, of which 600 were sold prior to 1809. Massie was entitled to one-fourth of the 900 remaining, amounting to 225 acres. The witness states that he had heard that Alexander Duke claimed land from bis father somewhere, perhaps as a gift or legacy, but that it is so long ago he can not state with certainty ; that he can only relate his impressions, except so far as his memory is assisted by papers in his possession. His impression is, that he purchased lands of Alexander Duke, and that the lands so purchased wore part of the entry of l,500f- acres before spoken of. The witness finds among his papers a receipt signed by Nathaniel Massie at Chillicothe, dated September 6, 1809, of which the following is a copy:
“ Chillicothe, September 6, 1809.
“Received of Mr. Francis Taylor 225 acres of land, being my proportion of the balance of a survey of 1,500 acres, made in the name of the heirs of Henry Field, and patented in the name of said Taylor, for which amount I have entered credit in his bond.
“Nathaniel Massie.”
The witness further states that he had no dealing with General Massie in Chillicothe; that he thinks Alexander Duke brought the receipt to him; that he paid said Duke for the land bought of him, and that he thinks the land so bought was the identical'land mentioned in the receipt; that he considered the receipt as a sufficient voucher for him to account with Massie, and that it was satisfactory evidence to him, to pay for the land to Duke; repeats that he thinks Alexander Duke brought him the receipt; states that he *was well acquainted with Basil Duke, and does not think that in 1809 he had any other nephew in the country than Alexander Duke ; that Alexander was then young and unmarried. The witness further says that his land was situated in what is now Clinton county, was of good quality, and that he knows of no reason why it was not at that time of as *44 much value as land in Hamilton county, unless the same was situated in the immediate vicinity of Cincinnati. The witness also proves the handwriting of Basil Duke to two letters which are also in evidence. Basil Duke is dead.
Prom this testimony it is apparent that Alexander Duke received from Taylor payment for 225 acres of land, which had been the property of Nathaniel Massie. Why was it so? Whence did ho acquire the right to receive this payment?
Let us turn our attention to the two letters, the authenticity of which is proved by Taylor. The first is dated Jaly 15, 1809, and is as follows:
“ Dear Sir : I have been expecting, for some days past, a letter from you, acquainting me with the situation of the laad. I will thank you to write me, stating the neighborhood where the land lies, so that it can be found, as my brother’s son is here and wishes to view it. Also, whether a patent has been obtained, and how the warrants have been disposed of. Your early answer will confer additional obligations on your friend, B. Duke.”
This letter is directed to Gen. Nathaniel Massie, and was answered by Massie, as appears from the second letter of Basil Duke, which is as follows :
“ Washington, September 2, 1809.
“Dear Sir: I received yours by mail. My nephew, to whom my brother has given the land, is willing to take the land spoken of by you in F. Taylor’s survey, in part of tho other land or in whole, if on examination it should be found *equal to the other. When I see you I can explain more fully my meaning: he will abide by any contract made by you and myself, and we can easily settle it when I see you. The object of the present letter is to prove to you that he will take the land, and also to request you to forward to F. Taylor a receipt, stating that you had received a full satisfaction, as locator, for 1,500 acres of land lying on the Miami, that is, to 225 acres, it being the balance of your proportion.
“ Taylor states to me that the original quantity was 1,500 acres, and out of that quantity 600 acres were sold, and that your proportion will be only 225. Taylor has purchased the 225. Expecting you shortly here, 1 shall not be so particular at this time. In much haste, yours, etc. B. Duke.”
Directed as before.
*45 Now, what “ other land ” is here spoken of, for which the 225 acres was to be taken “ in whole ” or “ in part” ? The letter refers to land which had been given by the writer’s brother to his, the writer’s nephew, who was then with him, and that nephew was Alexander Duke. What land had thus been given by the brother to the nephew? The proofs show that it was the one-half of entry and survey No. 2,204 of 400 acres, the identical land now in controversy. Massie having sold and conveyed the land in this survey, and anxious to protect his vendees, had undoubtedly in his letter to which this was an answer, proposed to exchange the 225 acres in the Taylor survey for the 200 in No. 2,204. The proposition was accepted; and before the last-recited letter was written the 225 acres had been sold to Taylor, who withheld payment only until Massio’s receipt could be procured. This receipt was executed on the 6th day of September, four days after the date of the letter, and is by Alexander Duke passed over to Taylor, who thereupon pays him for the land. This all transpired late in the year 1809, and we hear nothing further of any claim *of Alexander Duke to the land in controversy for a period of about thirty years.
Now, under all these circumstances, the question arises, whether an assignment was made by Duke to Massie, or whether such an assignment can be presumed. We are satisfied of this fact, that Massie actually paid for the land. We can come to no other conclusion. TJpon this point the evidence is satisfactory; an assignment ought to have been made unquestionably, and it is not going too far to presume, after this great length of time, that that was done which ought to have been done.
An attempt is made to account for this great delay by the excuse, that the plat and certificate of survey could not be, or wore not discovered until a period but little anterior to the date of the patent. These papers were in the hands of Massie. The complainant, immediately after he became interested in the land, in the year 1809, came to the west, and appears to have been located with his uncle. That uncle forthwith opened a correspondence with Massie upon the subject of the land. That correspondence was continued until the fall of the year, when the 225 acres were sold to Taylor, and from that period we hear nothing further relative to the business. Complainant must have known that Massie was interested in the survey, and might well have sup *46 posed that the latter would know something about these papers. He did so suppose, and through his uncle Basil, he applied to Massie for information. This was before the sale to Taylor; after that sale, although Massie lived four years, no further inquiry was made of him. William Creighton, Sen., was appointed administrator upon Massie’s estate, and Massie’s papers came into his hands. It does not appear that the complainant ever made any inquiry of him. In 1820, Cadwallader Wallace was, by the legislature of Ohio, appointed trustee upon Massie’s estate, and superseded Creighton as administrator to a very considerable extent, if not entirely. The papers of Massie were handed over to him, and among those papers were the identical ones upon which *the patent was issued. Wallace has been examined as a witness by the complainant, and states that during the time Massie’s papers remained in his hands, which was a period of ten years, no inquiry was made of him for those papers, and that at the close of his trusteeship, he passed them over to the heirs of Massie. He states further that, from some papers he had seen, but can not tell precisely what, he got the impression that the survey belonged of right to Massie. The papers remained in the hands of Massie’s heirs until 1838, when they were delivered to complainant. Here, then, was a period of twenty-nine years, in which, from anything that appears, no effort was made by the complainant to procure a title to the land. But after that period, Massie being dead, Basil Duke being dead, the claim is resuscitated and a patent at length procured. There is no sufficient apology for this delay. It can be accounted for upon no other presumption than the one assumed by the defendants—that the complainant had parted with his interest.
Upon a full examination of the whole case, we can come to no other conclusion than that, although the legal title is in the complainant, yet that he holds the same in trust for the defendants. The bill must therefore be dismissed at complainant’s cost