[No. 15115. Department Two. January 10, 1919.]

THE STATE OF WASHINGTON, *Respondent,* v. THOMAS J. BRANIFF, *Appellant.*[1]

LARCENY (25, 28)—EVIDENCE—SUFFICIENCY. The positive testimony of two accomplices that accused assisted and participated in the stealing of horses, sustains a conviction of larceny; the credibility of the witnesses being for the jury.

WITNESSES (127)—CORROBORATION—PREVIOUS CONSISTENT STATEMENTS. In a prosecution for larceny, in which practically the only testimony against the accused was that of two accomplices, which was not "assailed" by the defense by any impeaching evidence otherwise than by the opening statement that it was a "frame up," and by cross-examination, it is error to allow the state, in its case in chief, to corroborate the witnesses by testimony of the sheriff that, in his confession, one of the accomplices had made previous consistent statements.

Appeal from a judgment of the superior court for Asotin county, Miller, J., entered November 14, 1917, upon a trial and conviction of grand larceny. Reversed.

*C. H. Baldwin,* for appellant.

*Homer L. Post,* for respondent.

PARKER, J.—The defendant Braniff was convicted, by verdict and judgment rendered in the superior court for Asotin county, of the crime of grand larceny, committed by the stealing of three horses. He has appealed to this court.

[1]Reported in 177 Pac. 801.

It is contended in appellant's behalf that the evidence introduced upon the trial was not sufficient to sustain the verdict and judgment, and that the trial court should have so decided as a matter of law. There was evidence, if believed by the jury, to support the conviction. It became a question of the credibility of witnesses, particularly of two witnesses, who were confessed accomplices with appellant in the alleged commission of the crime. Their testimony was positive to the effect that appellant had assisted and participated with them in the stealing of the horses, so it was for the jury to decide whether or not they were telling the truth touching the question of appellant's guilt with them. We conclude, therefore, that appellant is not entitled to a reversal of the judgment and to his discharge upon this ground, though he may be entitled to a new trial because of error in the admission of evidence, as to which we now proceed to inquire.

It is contended by counsel for appellant that the trial court erred to his prejudice in permitting, over his objection, the sheriff of Asotin county to testify to statements made by Roy Clark upon a former occasion, consistent with the testimony given by him upon the trial. The purpose of the prosecuting attorney in introducing the sheriff's testimony as to Clark's previous statements was to sustain and corroborate Clark's testimony given upon the trial. The facts determinative of this question may be summarized as follows: Roy Clark and his brother, Orval, also called "Sank," were the two confessed accomplices in the alleged commission of the crime by appellant, though appellant was charged and tried therefor separately. In making his opening statement to the jury outlining the defense, counsel for appellant stated,

among other things, that "we will show you that there never was any friendship existing between the defendant and any of these Clarks. We expect to show you that it is a frame-up from start to finish on the part of these Clarks." The testimony of the Clarks is largely relied upon by the prosecution to show the commission of the crime by appellant; indeed, that is practically the only evidence in the record tending to connect appellant with the stealing of the horses. After Roy Clark had testified for the prosecution, relating in considerable detail how he and his brother and appellant, in pursuance of their previous agreement, had stolen the horses and taken them to Oregon, the sheriff was called as a witness for the prosecution and permitted, over the objection of counsel for appellant, to testify as follows:

"Q. Where did you first see Roy Clark? A. In Walla Walla. Q. When was that? A. In January; I don't remember the date. Q. January of this year? A. Yes, 1917. Q. Were you present there in Walla Walla when he made his confession? A. Yes, sir. Q. Did you hear him confess? A. I did. Q. You have heard the testimony he has given on the trial in this case? A. Yes, sir. . . . Q. Was the confession substantially the same as he testified to on the witness stand? A. His confession there was the same in substance as it has been given here on the witness stand."

This plainly had reference to statements made in Clark's confession implicating appellant in the stealing of the horses. During the cross-examination of Clark by counsel for appellant he was asked and answered as follows:

"Q. Is it not a fact, Roy, that you and Sank (the brother) and Bosley ran off the horses, and afterwards made up the scheme to throw the blame on to Tom Braniff? A. No, it is not."

It was thereafter that the testimony of the sheriff was given as part of the prosecution's case, and before any evidence whatever had been offered or introduced in appellant's behalf. No evidence was introduced on appellant's behalf at any time tending to show that Roy Clark had in his confession at Walla Walla, or at any other time, made statements inconsistent with what he testified to upon the witness stand as to appellant's connection with the stealing of the horses. In other words, there was no attempt on the part of appellant's counsel to impeach Roy Clark as a witness by showing previous statements made by him inconsistent with his story told upon the witness stand. Nor was there any impeaching evidence of any nature introduced, as such, in appellant's behalf as against Roy Clark as a witness. We think there are no other facts disclosed by the record which would be of aid to the prosecution in showing the admissibility of the sheriff's testimony.

Counsel for appellant invoke the general rule as stated in the text of 10 R. C. L., page 960, as follows:

"Statements made by a witness to other persons are no exceptions to the hearsay rule. . . . Nor can evidence of what a witness has said out of court be received to fortify his testimony. It violates a first principle in the law of evidence to allow a party to be affected, either in his person or his property, by the declarations of a witness made without oath. And, besides, it can be no confirmation of what the witness has said on oath, to show that he has made similar declarations when under no such solemn obligation to speak the truth."

That this is well settled law, subject to some few exceptions, is shown by numerous authorities, among which we note the following: *Pulsifer v. Crowell,* 63 Me. 22; *Connor v. People,* 18 Colo. 373, 33 Pac. 159, 36 Am. St. 295, 25 L. R. A. 341; *Stolp. v. Blair,* 68 Ill.

541; *State v. Taylor,* 134 Mo. 109, 154, 35 S. W. 92; *James v. State,* 115 Ala. 83, 22 South. 565; *Conway v. State,* 33 Tex. Cr. 327, 26 S. W. 401; *Loomis v. New York, New Haven & H. R. Co.,* 159 Mass. 39, 34 N. E. 82; *Builders' Supply Co. v. Cox,* 68 Conn. 380, 36 Atl. 797.

This is conceded to be the well established rule, but counsel for the state argues that the sheriff's testimony in this case was admissible under the exception thereto, which he states as follows:

"—when the testimony of a witness is assailed as a recent fabrication, evidence of prior consistent statements is admissible."

It seems that some courts have stated an exception to the rule in this somewhat general language, but in the application of such exception the great majority of the decisions show that the word "assailed," when so used, means assailed by at least some form of impeachment of the witness testifying upon the trial. Now the only manner in which Clark's testimony was assailed by counsel for appellant was, as claimed by counsel for the state, the statement of appellant's counsel in making his opening statement, preliminary to the introduction of any evidence, even on behalf of the state, and his cross-examination of Clark before the sheriff testified. It was not claimed that, up to this time, or even thereafter during the trial, there was any attempt to prove in appellant's behalf that Clark had at any time previously made statements inconsistent with, or contradictory of, his testimony given upon the trial, or that there was any attempt on the part of counsel for appellant to introduce impeaching evidence of any nature, as such, against Clark as a witness. No decision has come to our notice, and we think there is none, holding that the mere

assertion of counsel, such as was made by counsel for appellant in his opening statement to the jury, that "we expect to show you that it is a frame-up" etc., constituted such an assailing of Clark's testimony as to render this testimony of the sheriff as to Clark's previous consistent statements admissible. We also think that the great weight of authority is to the effect that the mere assailing of a witness' testimony by cross-examination, though such cross-examination may suggest impeachment, does not render it permissible to prove previous consistent statements of the witness in order to sustain or corroborate his testimony given upon the trial. In 1 Greenleaf, Evidence (16th ed.), § 469b, that learned author says:

"In the eighteenth century it was considered proper to receive such statements in corroboration, even before the witness had been discredited in any way. But this doctrine has wholly passed away; for it is clear that an untrustworthy story is not made more trustworthy by any number of repetitions of it. There must at least have been some sort of discrediting of the witness, which the consistent statements help to remove. . . ."

And after noting some exceptions to the general rule, with which we are not here concerned, he further says, at the conclusion of that section, as follows:

"It is sometimes said that this sort of evidence is admissible after impeachment of any sort, in particular, after any impeachment by cross-examination; but there is no reason for such a loose rule."

In 5 Jones, Commentaries on Evidence, § 870, that learned author says:

"There are a few exceptional cases contrary to the great weight of authority which admit evidence of prior consistent statements to corroborate the witness, when he is attacked on cross-examination in almost any manner."

Counsel for the state cites and relies upon the following of our own decisions as recognizing and making applicable to this case the exception to the general rule which he here invokes: *State v. Manville,* 8 Wash. 523, 36 Pac. 470; *State v. Coates,* 22 Wash. 601, 61 Pac. 726; *Conover v. Neher-Ross Co.,* 38 Wash. 172, 80 Pac. 281, 107 Am. St. 841; *State v. Spisak,* 94 Wash. 566, 162 Pac. 998. We think a critical reading of those decisions will plainly show that each has to do with testimony introduced to rebut impeaching testimony which had been given tending to show that the witness had previously made statements inconsistent with his testimony given upon the trial. In other words, in each of these cases the testimony of the witness had been assailed by impeaching testimony tending to show previous inconsistent statements; and it was to rebut the making of such alleged inconsistent statements by the witness that the testimony in question was held to be admissible. In none of them was the witness' testimony assailed by the mere assertion of counsel in his opening statement to the jury, or by mere cross-examination of the witness. It would also seem that in no event could it be said that the testimony of Clark was assailed by counsel for appellant as a recent fabrication, so as to render the sheriff's testimony admissible. Clark's testimony was given upon the trial of this case in November, 1917, while the claimed consistent statement made by him in the making of his confession, as testified to by the sheriff, occurred in January, 1917, and we note that whatever suggestion the record may disclose as to ill-feeling existing between Clark and appellant is to the effect that such ill-feeling came into existence long before he made the statements in his confession implicating appellant, to which the sheriff testified. So there is

nothing here to indicate that Clark, when making his confession implicating appellant, was inspired by any different feeling toward appellant than at the time he testified at the trial. Of course, in his confession, he was making a statement against his own interest, but whatever interest he had in the implication of appellant existed at the time he made his confession, in exactly the same degree as it did at the time he testified upon the stand, in so far as any suggestion of his ill-feeling towards appellant can be drawn from the record in this case. This is not a case of Clark making a previous consistent statement against his own interest; nor is it a case of Clark making a previous consistent statement at a time when he had any motive or interest different from that at the time he testified in this case, in so far as we are concerned with appellant's rights here involved. We are of the opinion that the sheriff's testimony was erroneously admitted, and that it was highly prejudicial to appellant's rights; especially in view of the fact that the question of his guilt was to be determined by the jury practically wholly upon the testimony of the accomplice witnesses, Clark and his brother.

Some contention is made that the question of the admissibility of the sheriff's testimony is not properly before us for want of proper objections, exceptions and assignments of error. The objections and exceptions, and also the formal assignments of error, are a little involved as they appear in the record; but we think it is clear that they appear therein in such manner as to entitle appellant to have the question of the admissibility of the sheriff's testimony reviewed here. The testimony of the sheriff relating to the testimony of Orval Clark and his previously claimed consistent statements made in his confession

implicating appellant was, in substance, the same as the sheriff's testimony relating to the testimony of Roy Clark and his previous consistent statements. To review the claim of error as to this testimony would be but to repeat what we have already said.

The judgment is reversed, and appellant awarded a new trial.

Main, C. J., Fullerton, Mount, and Holcomb, JJ., concur.