[No. 30504. Department One. July 2, 1948.]

CHARLES CHOATE et al., Appellants, v. LE ROY J. ROBERTSON et al., Respondents.[1]

[1] Reported in 195 P. (2d) 630.

*Warner, Pierce & Peden,* for appellants.

*W. E. DuPuis* and *Lloyd Bever,* for respondents.

SIMPSON, J.—This case involves an automobile accident. Plaintiffs sued to recover for personal injuries to Mrs. Choate. The trial was had to the court sitting with a jury. The jury returned a verdict in favor of the defendants. Plaintiffs moved for a new trial, which was denied by the court. Thereafter the court entered judgment in conformity with the verdict. Plaintiffs have appealed.

The assignments of error relate to the refusal to give plaintiffs' proposed instruction No. 9, the failure of the court to allow the introduction of an exhibit known as exhibit No. 2, in giving ten instructions, and in refusing to grant a new trial.

For the sake of brevity, we shall refer to the drivers of the cars as though they were the only parties to this action.

The accident happened at 5:55 p. m., November 9, 1946, on Aurora avenue in the city of Seattle. Just prior to, and at the time of, the accident, Ruth Choate was driving her automobile in a northerly direction on the right side of the street. Respondent was driving in a southerly direction on his portion of the avenue. Aurora avenue at the point where the accident occurred is eighty-one feet wide, and consists of a five-foot strip in the center, with three traffic lanes of ten feet in width, and a parking lane of eight feet on either side. It was dark at the time of the accident, it was raining heavily, and the streets were wet and slippery. As respondent passed Valley street where it intersected with Aurora avenue, he lost control of his car, which skidded over into the middle traffic lane of the northbound traffic and came to rest headed in a northerly direction. Almost immediately after respondent's car stopped, Mrs. Choate's car crashed into the rear end of it. The cars were damaged severely, and both drivers were taken to the hospital. Respondent was treated and released, while appellant, Mrs. Choate, received hospital care until December 2, 1946. The drivers of the cars were traveling about twenty to thirty-five miles per hour.

Appellant's principal contention is that respondent was guilty of negligence in allowing his car to go over onto the

opposite side of the road from which he was driving, and that the court should have instructed the jury, as requested by appellant, that the defendant was liable to the plaintiff for any damages suffered by her as a result of the collision.

In order to ascertain the exact factual situation upon which to base our opinion on this question, we find it necessary to set out the following uncontradicted testimony given by respondent and his riding companion, Philip Ethier.

Respondent's evidence is as follows:

"We were driving with traffic, so I would say between 30 and 35, and were—were just going, following the traffic. We weren't passing anybody, so I would say between 30 and 35. That's a thirty-five mile speed limit there. . . . Q. Why did you press the brake? Did you see the lights down ahead? A. Yes, a stop light down on Roy Street, and most of the time you have to stop for that light, so I was going to slack up a little bit so I would be able to stop in case it would turn green or red because it was pretty slippery out anyway. Q. How did it feel? What sensation did you have when you pressed the brakes? Struck something slippery? A. Well, I would say we struck something, either —maybe a stick in the road or maybe a greasy spot. It's hard to tell when it was raining, you can't see right down on the road to see what there is there, so I would say maybe it was a stick or a spot of grease. Q. What did you do, Roy, when it started to slide? A. Well, I didn't want to put the brake on too hard, but I wanted to stop. . . . When it started to slide, I released the brake, and that didn't help it any, so I put it on a little more, not heavy, but lightly. And it kept on sliding until it went across the intersection. Then, I finally got it stopped. . . . Q. So it made a turn and ended up facing north? A. That's right."

Ethier testified:

"I was a passenger with Mr. Robertson the evening this accident happened, and I wasn't pay too much attention to where we were going because everything had been going along. It was raining like the dickens. I was talking to him. The car started to slide a little bit, and, of course, I come awake right away. I don't mean that I was sleeping, but I became aware of something happening. And we turned around, made a slight turn around. The car was going the other way, headed the opposite direction, north, and I thought at first that there was a danger, and I had myself all

braced and set. And I relaxed. We was just coming to a stop or had just—had stopped when this terrific impact occurred."

Negligence cannot be predicated upon the mere fact that a car skids from one side of the highway to another. However, if the skidding is due to any negligent act or omission on the part of the driver of the car, he will be liable for the consequences of his skidding. In cases of this character, the burden is upon the driver on the wrong side of the road to show that he arrived there through no fault of his own. *Wilson v. Congdon*, 179 Wash. 400, 37 P. (2d) 892; *Tutewiler v. Shannon*, 8 Wn. (2d) 23, 111 P. (2d) 215.

Measured by this rule, we must conclude that the court was correct in submitting the question of respondent's negligence to the jury, and in refusing to give appellant's instruction which would have taken that question from the jury and decided that, as a matter of law, respondent was liable for the accident.

The next contention made by appellant is that the court committed reversible error in submitting the question of contributory negligence to the jury. This contention is embodied in the exceptions to the instructions Nos. 4, 5, 7, 13, and 17, in which instructions the court apprised the jury as to the law respecting contributory negligence.

Evidence is found in the testimony of Mrs. Choate that she didn't remember seeing respondent's car or attempting to avoid it. In considering this question, we must bear in mind that the evening was dark, that a heavy rain was falling, and that the pavement was slippery. We must also bear in mind that the evidence showed a very severe damage to the front end of appellant's car and to the rear end of respondent's car. Respondent's car had come to a rest, and the damage was caused entirely by the force with which it was hit by appellant's automobile.

The following excerpts from our cases announce the rule which should be applied to the case at bar:

"The trial court instructed the jury, in effect, that it was the duty of the appellant, taking into consideration the surrounding facts and circumstances, to operate its street cars

at a reasonable rate of speed, and it is claimed that this was error. The argument is based on the assumption that there was no evidence of the speed of the street car at the time of the collision in question. It is true that there was no direct evidence as to speed. There was evidence as to the nature of the crash when the impact occurred and the distance which the street car proceeded along the track thereafter, before it came to a stop.  .  .  .

"It was not error to tell the jury in the instruction complained of that it was the duty of the respondent to have its street car operated, at the time and under the facts and circumstances then shown by the evidence to exist, at a reasonable rate of speed." *Osborn v. Seattle*, 142 Wash. 25, 252 Pac. 164.

"There was no direct evidence of the rate of speed at which the stage was being driven, but the fact that it ran into the rear of the Hunter car and caused such damage to it and the driver, is some evidence from which the jury might infer excessive speed, under the circumstances existing at that time and place." *Hunter v. Lincoln Stages*, 161 Wash. 634, 297 Pac. 179.

"Although appellant's witnesses testified that the stage was traveling at a rate of speed of from twenty to twenty-five miles per hour, there was also evidence of the violence of the impact and its consequent result, as already indicated. The jury had a right to take this into consideration in determining whether the stage was traveling at an excessive rate of speed under the circumstances. The motor-vehicle law indicates by its provisions that the maximum rate of speed is not always permissible, under any and all circumstances, but must be reasonable and proper under the existing conditions at the place of operation, one of those conditions being freedom from obstruction of the view ahead. That the impact and violence of a collision may be taken into consideration in determining the rate of speed, is well settled." *Copeland v. North Coast Transp. Co.*, 169 Wash. 84, 13 P. (2d) 65.

"There was sufficient evidence to sustain the trial court's findings of negligence. The force with which respondent's car struck the utility pole, after having been forced over the curb and shoved some distance on the parking strip, and the physical damage done, taken in connection with all the other circumstances of the case, were sufficient to establish excessive speed as determined by the court." *Hardman· v. Younkers*, 15 Wn. (2d) 483, 131 P. (2d) 177, 151 A. L. R. 868.

■ Based upon these rules of law which this court has laid down, it becomes necessary to hold that the court was justified in allowing, and that it was its duty to allow, the jury to determine whether or not appellant was guilty of contributory negligence in driving as she did on a dark and rainy night, and upon a wet pavement. There being sufficient evidence to go to a jury on the question of contributory negligence, and the jury having found for respondent, we must abide their decision.

■ Appellant next contends that the trial court overemphasized its instructions concerning contributory negligence. We have read the instructions carefully and have come to the conclusion that these instructions were entirely correct. It is entirely proper for the court to define contributory negligence in a general way, and again apply in specific terms the rules already announced to the facts in the case. *Cecchi v. Bosa,* 186 Wash. 205, 57 P. (2d) 1064; *Leer v. Cohen,* 10 Wn. (2d) 239, 116 P. (2d) 535.

■ Error is also assigned on the court's ruling on the admissibility of certain hospital records offered by appellant. The hospital records were from the King county hospital and were identified as used in the ordinary course of business in the hospital. The witness called to identify the offered exhibit was the custodian of those records. It is argued that the refusal to admit these records is prejudicial because they corroborate the testimony of Mrs. Choate that she was unconscious, and therefore could not remember the facts concerning the collision.

Rem. Supp. 1947, § 1263-2, provides:

"A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the Court, the sources of information, method and time of preparation were such as to justify its admission."

In our opinion, this statute allows the trial court to exercise its discretion as to whether or not such records as pre-

sented here, shall be admitted in the trial of a cause. We cannot conclude that the court abused its discretion in ruling as it did. Mrs. Choate was rendered unconscious at the time of the collision, and testified that for some time thereafter she did not remember anything about the driving, or about what occurred at the time of the accident. This evidence was not contradicted in any manner. Error was not committed by the trial court in refusing to admit the hospital record.

■■ Another contention made by appellant is that instructions Nos. 9, 13, and 17 were erroneous because they failed to state that the respondent had the burden of proof on the issues of contributory negligence. Instruction No. 9 will not be considered because it is not set out in the brief in full as required by Rule of Supreme Court 16(5), 18 Wn. (2d) 18-a. We find, however, that the court in other instructions properly instructed the jury that the burden of proving contributory negligence was upon respondent.

■ The court, in instruction No. 15, advised the jury concerning the rule relative to sudden emergencies and applied that instruction to the situation which faced respondent at the time his car started to skid. We can find no error in the giving of this instruction. The testimony of respondent and his witness plainly indicated that, when he started to put on his brake in order to stop, his car started to slide over to one side, and that he then loosened the brake and applied it again in order to make a stop. The evidence shows that there was a sudden emergency. The respondent did not know of the slippery condition, even though he knew that it was dark and raining hard. The slipping of the wheels came on suddenly, and it was for the jury to determine whether or not he acted as a reasonably prudent person would have acted under the same circumstances.

Finally appellant contends that she should be granted a new trial. The argument of appellant's counsel upon this phase of the case is based almost entirely on the alleged errors of the court in refusing to give appellant's proposed instruction, or giving instructions mentioned in this opinion.

We have made a careful study of the record as shown by the statement of facts and the exhibits, together with the law cited by the parties to this litigation. It is our conclusion that the court did not commit any error and that the case was properly submitted to the jury upon disputed evidence.

The situation being as just stated, it is necessary that we affirm the conclusion reached by the jury and affirmed by the judgment of the trial court.

Judgment affirmed.

MALLERY, C. J., MILLARD, SCHWELLENBACH, and HILL, JJ., concur.

[1]Reported in 195 P. (2d) 650.