[No. 47146–1.   En Banc.   October 22, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. HARVEY FROEHLICH, *Petitioner*.

*Flower & Andreotti, P.S.,* by *Patrick Andreotti,* for petitioner.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *David W. Waterbury, Deputy,* for respondent.

STAFFORD, J.—A jury convicted Harvey Froehlich of second degree burglary. Two issues are raised on appeal: (1) whether a prosecution witness was competent to testify; and (2) whether, after he was declared competent to testify, the trial court erred by permitting a psychiatrist to testify about his mental condition.

John Bliss had previously been convicted of participating in the burglary with which appellant (petitioner in this court) had been charged. At trial Bliss, who was called as a State's witness, appeared extremely nervous after taking the stand. Following a series of leading questions, to which objections were sustained, the jury was excused. Thereafter,

Bliss was examined and cross–examined to determine the extent to which he had an independent recollection of critical events.

Bliss was able to identify appellant, was able to recall that appellant and he were at the site of the crime at the critical time, and that he "took stuff", that he owned a white Chevrolet pickup which had been used in the crime and that he remembered running. He stated he remembered the incident as opposed to having to rely on others to tell him. The importance of the foregoing testimony was that it placed appellant at the scene of the crime. On cross–examination he was unable to remember whether he and appellant had taken anything.

Also, out of the jury's presence, Bliss explained he had been injured about eight years previously while on duty with the army. Since that time he had received medical help, had been hospitalized for a nervous condition and had received medication for it. He also acknowledged he had a hard time remembering things and forgot almost everything unless he used repetition or was reminded frequently. His current psychiatrist testified, out of the jury's presence, that Bliss had an "anxiety" problem but had no brain damage, did not fantasize or hallucinate and was not psychotic. He opined that Bliss was "scared to death in court" but that he had the ability to differentiate between truthfulness and untruthfulness.

After hearing the foregoing testimony the trial judge concluded he could not disqualify the witness and ruled Bliss was competent to testify subject to cross–examination by defense counsel. The question of credibility was left to the jury.

■ Appellant asserts Bliss was not competent to testify because the State had not adequately demonstrated his ability to independently recall the critical events about which he had been called to testify. In support of this proposition appellant cites RCW 5.60.050(1), (2) relying

particularly on subsection (2).[1] He appears to concede that witness Bliss was competent to testify under subsection (1) because he was not shown to be of unsound mind. *See State v. Hardung,* 161 Wash. 379, 297 P. 167 (1931); *State v. Thach,* 5 Wn. App. 194, 199–200, 486 P.2d 1146 (1971). Nevertheless, he contends even if the witness was of sound mind he was incompetent to testify because his memory was not sufficient to retain an independent recollection of the events, citing RCW 5.60.050(2). We do not agree. RCW 5.60.050(2) applies specifically to *children under the age of 10.* It is inapplicable to the case at hand, even by analogy. Further, the cases cited by appellant are inapposite. All are concerned with the competency of *children* within the limitations of RCW 5.60.050(2).

■ Competency is a matter to be determined by the trial court within the framework of RCW 5.60.050 and CrR 6.12(c). *State v. Moorison,* 43 Wn.2d 23, 34, 259 P.2d 1105 (1953); *McCutcheon v. Brownfield,* 2 Wn. App. 348, 355, 467 P.2d 868 (1970). That conclusion will not be disturbed on appeal except for abuse of discretion. There being nothing in the record to establish that Bliss was of unsound mind, we hold the trial court did not abuse its discretion by ruling he was competent to testify, leaving the question of credibility to the jury. CrR 6.12(c); RCW 5.60.050(1).

Once the trial court held Bliss was competent to testify the jury returned to the courtroom and Bliss testified basically as he had outside the jury's presence. He also testified on direct examination concerning his nervous condition, his treatment, medication and the trouble with his memory. He also explained that he never hallucinated. On cross-examination he acknowledged he could remember

---

[1]RCW 5.60.050(1), (2).

"The following persons shall not be competent to testify:

"(1) Those who are of unsound mind, or intoxicated at the time of their production for examination, and

"(2) Children under ten years of age, who appear incapable of receiving just impressions of the facts, respecting which they are examined, or of relating them truly."

very little about the crime or its aftermath but stated he *did* remember appellant being at the apartment. During his presence on the stand the witness' nervous condition was clearly perceivable by the jury.

At the conclusion of Bliss' testimony the prosecution called his psychiatrist as a witness, over the objection of the defense. The doctor testified that Bliss had an "anxiety reaction", that he had not suffered brain damage in the accident, that he was not psychotic and that he could differentiate between truth and untruth. The doctor was not asked about and did not attempt to evaluate the testimony of Bliss or give an opinion as to whether he was actually telling the truth. There was no cross–examination of the doctor. The trial judge held the testimony was admissible stating "it seems to me it is inherent in the Bliss testimony that . . . the question of his capacity to tell truth from untruth, would be . . . open to question".

Appellant contends the psychiatrist should not have been permitted to testify about Bliss' condition. He argues the testimony served to corroborate Bliss' testimony and thus fortified his credibility even though appellant had not challenged it. In this regard he cites the general rule that corroborating evidence is admissible only when a witness' credibility has been attacked by the opposing party and, even then, only on the facet of the witness' character or testimony which has been challenged. *State v. Schuman,* 89 Wash. 9, 17–18, 153 P. 1084 (1915).

■ Although the foregoing is a correct general statement of the law it is not pertinent here. Three different but related factors in this case make it clear Bliss' credibility was attacked: the cross–examination of Bliss; the obviousness of his disability; and the attack on his capacity to be a witness. It may be that any one of these standing alone would not have been enough to place his credibility in issue, but all three in conjunction clearly opened the door to corroborating testimony.

Appellant attacked the witness' credibility by use of a probing cross–examination designed to demonstrate his

poor memory and suggestibility. This was proper. Cross–examination as to a mental state or condition, to impeach a witness, is permissible. Annot., *Cross–Examination of Witness as to His Mental State or Condition, To Impeach Competency or Credibility,* 44 A.L.R.3d 1203, 1210 (1972) and cases cited therein. Cross–examination is one of several recognized means of attempting to demonstrate that a witness has erred because of his mental state or condition. In addition, in a proper case counsel may produce experimental evidence to indicate a mental infirmity, or he may call an expert witness to testify as to the witness' mental infirmity. Annot., 44 A.L.R.3d at 1208. In each of these methods the purpose is the same, *i.e.,* to impeach the witness and put his credibility in issue by showing his mental condition and how it affects his testimony. *See* Juviler, *Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach,* 48 Cal. L. Rev. 648, 651–52 (1960) (hereafter Juviler).

Appellant employed this tool in an effort to destroy the witness' credibility. The entire thrust of the cross–examination was to show that Bliss had virtually no recollection of events, including those that occurred only a few days prior to trial. This was done to cause the jury to infer that since the witness did not remember these other matters he must be mistaken or lying when he said he remembered critical events. In so doing appellant attacked the credibility of the witness, and opened the door for corroborating testimony.

The trial court was correct in noting that the issue of credibility was also inherent in Bliss' testimony. A witness' credibility is always at issue, but it was particularly so in this highly unusual setting. The mental defects of the witness were clearly demonstrated to the trial court and jury by the extreme state of nervousness. A review of the record made by the trial court in expressing its concerns makes it equally obvious to this court on appeal. Where, as here, the mental disability of a witness is clearly apparent and his competency is a central issue in the case, the jury need not

be left in ignorance about that condition or its consequences.

■ Another factor lends weight to our determination that appellant put Bliss' credibility in issue. Appellant argued strenuously at trial and on appeal that the witness was incompetent as a witness due to his claimed inability to recall, a problem which resulted from his mental condition. In a situation such as this competency shades into credibility. Once a trial judge determines a person with mental defects is competent, *i.e.,* that he understands the nature of the oath and is not incapable of giving a correct account of what he has seen or heard, *State v. Moorison, supra,* the jury must then determine the extent to which the witness has the required capacities to observe, recollect and communicate truthfully because they also affect credibility. Juviler, at 651. As stated in *United States v. Benn,* 476 F.2d 1127 (D.C. Cir. 1972), Bazelon, C.J., speaking for the court at page 1131:

> The dangers which must be considered in determining whether a mentally retarded rape prosecutrix is a competent witness must also be considered by the jury in assessing her credibility, particularly since "the jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence.

(Footnote omitted.) Challenging the competency of a witness, as was done here, necessarily puts his credibility in issue since both are ultimately concerned with the same matter. This is especially true where, as here, appellant submitted the same evidence to both judge and jury for making their respective determinations.

■ Psychiatric testimony can often be helpful in aiding the jury in its evaluation of the testimony of a mentally defective witness, *see United States v. Benn, supra,* Juviler, *supra,* as can lay testimony of persons intimately acquainted with the witness. *See United States v. Benn, supra* (father of witness); *State v. Jensen,* 5 Wn. App. 636, 489 P.2d 1136 (1971) (teacher of witness). As with most testimony, the trial court has discretionary control. In this

context, it must be determined whether expert testimony will help cast light on the effect the particular mental disorder will have on credibility. *State v. Stamm,* 16 Wn. App. 603, 559 P.2d 1 (1976).

If admitted, the testimony should be limited by the purpose for which it is introduced as was done here. The jury should be made aware of a witness' mental or emotional condition and the effect of that condition upon his testimony. *See* Juviler, at 651. This was precisely the subject matter of Dr. Hardy's testimony in the instant case. At trial appellant did not question Dr. Hardy's qualification to give his opinion or the basis for that opinion and he does not do so here. Consequently we express no opinion in that regard.

Under the peculiar facts of this case we feel the expert testimony was properly admitted to enlighten the jury. The questions of competence and credibility were critical, and were put into issue by appellant. Thus, it was necessary for both the trial judge and the jury to hear the psychiatrist's testimony to enable the judge to pass upon the question of competency, and, in view of the finding of competency, for the jury to pass upon the issue of credibility. *See State v. Jensen,* 5 Wn. App. 636, 489 P.2d 1136 (1971); *State v. Wyse,* 71 Wn.2d 434, 429 P.2d 121 (1967). We hold the trial court did not abuse its discretion under the facts of this case.

The Court of Appeals is affirmed.

BRACHTENBACH, C.J., and UTTER, DOLLIVER, HICKS, and DIMMICK, JJ., concur.

DORE, J. (dissenting in part, concurring in part)—I concur that witness Bliss was competent to testify; however, I would have found that the trial court committed prejudicial error in permitting Dr. Hardy, a psychiatrist, to testify before the jury concerning his observations and interviews with Bliss.

The issue raised here is whether a nervous witness, suffering from anxiety, who has difficulty remembering, can

have his testimony enhanced and corroborated by the testimony of his psychiatrist.

Dr. Hardy was Bliss' psychiatrist from the 14th of March 1977 to September 27, 1977, and examined him some nine times. Dr. Hardy testified *outside* the presence of the jury, that Bliss had no brain damage; that he had a lot of anxiety that made him extremely tense; that he was uptight, upset and nervous; and that the army labeled it as "a nervous problem". He stated Bliss is not psychotic and never has been; he doesn't have hallucinations or suffer from fantasies; he has the ability to differentiate between right and wrong; he knows the difference between truthfulness and untruthfulness; he has the ability to tell the truth, and he's scared to death of being in the courtroom.

After hearing the testimony of Hardy and Bliss outside the presence of the jury, the court, exercising its discretion, ruled that Bliss was competent to be a witness.

The trial then moved back to the open courtroom before the jury. Bliss took the stand and readily recalled the 1977 incident and placed Froehlich at the scene of the crime during the nighttime. Bliss remembers few details of the burglary except that he was convicted of the crime of burglary for his activities that evening. This is perfectly understandable; in all probability he didn't want to be a stool pigeon with his coburglar listening. Perhaps he was too sensitive to put before the jury his own participation in a crime. Bliss subsequently testified to having a 1970 white Chevrolet pickup and that he was currently on probation because of his conviction of the subject burglary. He explained his nervous condition to the jury, saying that he had been involved in a wreck in the army some 7 years before and, as a result, he had since been receiving psychiatric help and hospitalization for his nervousness. He also explained that he has trouble with his memory and he has to talk about things a lot in order to remember them. He related that he had worked for Joe's Texaco Station; that he owns property and stays in one cabin and rents the other; that he works every day; and that he knows what

hallucination means and that he never had any, at any time. The thrust of cross-examination was to test Bliss' memory by asking him whether he independently recalled the incident that occurred on or about January 10, 1977, or whether this testimony had been suggested by the prosecutor or the police. It is interesting that his prior conviction for burglary rising out of the same incident and his subsequent imprisonment and present probation was brought out by the prosecutor, not the defense. Nowhere in the cross-examination that I could discern was Bliss' credibility put under attack or any challenge made as to his truthfulness or his ability to tell right from wrong.

A comparison of Bliss' testimony outside the presence of the jury and his testimony in open court is substantially the same with minor inconsistencies. Bliss, before the jury, had little difficulty recalling the answers to questions put by the prosecutor and the defense other than in the area of the criminal activities at the situs of the crime.

Following conclusion of Bliss' testimony, Dr. Hardy was permitted to testify over the defense's objection. Dr. Hardy, in the presence of the jury, repeated much of his previous testimony, again stating that Bliss was not psychotic, had no brain damage, and that he is very nervous but that Bliss could differentiate between truth and untruth. Dr. Hardy was not cross-examined.

We have to ask ourselves why was Dr. Hardy's testimony necessary? What was its purpose? Was it prejudicially harmful to the defendant? When the court asked the prosecutor these questions, he related

> Well, your Honor, I don't believe that the evidence is being produced *solely* to corroborate any testimony that Mr. Bliss gave. The testimony is being offered to, first of all, to give his evaluation of that witness whose mental problems are obvious.

The prosecutor spoke of "mental problems"; however, there was no evidence that Bliss had mental deficiencies or disorders but only that he had a nervous condition. The worst Bliss said was that he had difficulties remembering

things unless there was repetition. Don't we all?

Obviously the testimony of Dr. Hardy was offered in evidence by the prosecution in an attempt to bolster Bliss' credibility. This situation is analogous to those cases in which a party seeks to introduce evidence of good character, reputation for truth and veracity, prior consistent statements, evidence which corroborates the witness' testimony or other evidence which stands to fortify the credibility of a witness. The uniform rule in such cases is that evidence designed to bolster the witness' credibility is admissible only where his credibility has been attacked by the opposing party, and even then such evidence is admissible only on the facts of the witness' character or testimony which has been challenged. *Bennett v. Seattle Elec. Co.,* 56 Wash. 407, 105 P. 825 (1909); *State v. Braniff,* 105 Wash. 327, 177 P. 801 (1919); *State v. Lynch,* 176 Wash. 349, 29 P.2d 393 (1934); *Choate v. Robertson,* 31 Wn.2d 118, 195 P.2d 630 (1948); *Perkins v. United States,* 315 F.2d 120 (9th Cir.), *cert. denied,* 375 U.S. 916, 11 L. Ed. 2d 155, 84 S. Ct. 201 (1963).

*Gissendaner v. State,* 54 Ala. App. 535, 310 So. 2d 255 (1975) presents a factual situation similar to the present case wherein the appellate court ruled such testimony inadmissible. The trial court permitted the prosecution to elicit testimony from its chief witness that he had never been arrested or convicted of a crime even though the defendant had not offered any evidence to impeach the witness or attack his credibility. The State contended that because the witness had a speech impediment which made his testimony less impressive and that the witness appeared to be upset over the death of his father, the admission of the evidence to bolster his testimony was authorized. The appeals court ruled that the evidence was inadmissible for that purpose and the admission of such evidence was grounds for reversal of the defendant's conviction.

§935. Individual grades of capacity to observe or remember, as discoverable by psychologic science. Ordinary experience in human nature has not furnished us

hitherto with generalizations upon any of these features of testimonial capacity except the abnormal ones. The *variations in normal persons* have not been detectible by ordinary methods of observation available to the lay witness. The fact, for example, that a person testifying is endowed with a less retentive memory than other persons falls within that range of average variations which constitutes normality. Its presence has been left to the cross–examiner to detect, in judicial practice hitherto. No doubt the line may be sometimes hard to draw, but the distinction of principle is clear between that general variation of all powers which would be found in any given number of healthy persons, and that specific impairment which, when associated with disease or with other extensive mental derangement, marks the person as abnormal.

Day J., in *Bell v. Rinner,* 16 Ohio St. 45, 46 (1864): The question presented by the record is whether the credibility of a competent witness may be impeached by general evidence that the witness is not possessed of ordinary intelligence or powers of mind. It would not only be novel in practice, but would be entirely impracticable, to permit the parties on the trial of a case to go into general proof as to the strength of the mental capacity of the several witnesses. It might lead to as many collateral issues as there are witnesses, and thus divert the minds of the triers from the substantial issues of the case. Moreover, if it be conceded that the credibility of a witness is to be graded in proportion to his strength of intellect, the tribunal before which he testifies can better estimate his capacity and the weight to which his testimony is entitled by his manner and by his statements on cross–examination, than can ordinarily be done by the testimony and conflicting opinions of other witnesses as to the extent of his mental powers or the degree of his intelligence. . . . The degree of credit to which he is entitled in the testimony given cannot be practically better ascertained than by the usual tests, without resort to other proof of his capacity.

(Footnote omitted.) 3A J. Wigmore, *Evidence* § 935 (1970).

The majority opinion states at page 305:

Three different but related factors in this case make it clear Bliss' credibility was attacked: the cross–examina-

tion of Bliss; the obviousness of his disability; and the attack on his capacity to be a witness. It may be that any one of these standing alone would not have been enough to place his credibility in issue, but all three in conjunction clearly opened the door to corroborating testimony.

Let us examine the cross–examination of Bliss. The majority said, "Appellant attacked the witness' credibility by use of a probing cross–examination designed to demonstrate his poor memory and suggestibility". It was true Bliss was cross–examined as to his poor memory but nowhere were any questions asked that attacked his credibility; that is, that he was not telling the truth. Cross–examination is carried out in most cases by probing the witness' memory. However, without more, such as impeaching the witnesses by inconsistent statements from depositions or bringing other testimony or issues involving whether or not he's telling the truth, his credibility is not under attack. To say that Bliss' credibility was attacked by the defense on cross–examination is fiction.

The next item listed by the majority is "obviousness of his disability". I frankly don't know what disability they are talking about other than the fact that he apparently was extremely nervous and was scared to testify. This condition is not unusual to most witnesses when they take the stand in a strange environment, such as the court, and it is not unusual that such witnesses are extremely nervous and, in many cases, become incoherent and have no recall ability at all. This was not the case here where the witness had an excellent recall of the pertinent matters in the case as well as matters pertaining to his personal life. The third reason given was "attack on his capacity to be a witness". It is true that originally the defense contended that the witness was not competent to testify. However, in the outside–of–jury probe conducted by the court, it was clear that the witness said that he had an independent recollection of the facts that he testified to. In any event, the jury was not present during this testimony on capacity and would have no knowledge of the fact that defense had challenged the

capacity of the witness to testify.

In summary, it is clear that the three modes of attacking the credibility of the witness as listed by the majority are invalid. This is not a case of a witness having an organic mental defect or brain damage or one who suffers from hallucinations and is psychotic but merely a case where we have an extremely nervous person who is visibly nervous on the witness stand and says he has a poor memory. I don't believe that Bliss is different from a lot of other witnesses; however, if this case is upheld, prosecutions in the future could bolster, corroborate and shore up the testimony of their key witnesses by introducing expert testimony to corroborate their witness' truthfulness, just because they have a nervous condition or suffer from anxiety. This would be an intolerable situation.

There can be little dispute that Dr. Hardy's testimony substantially enhanced the witness' standing with the jury. He told that Bliss served his country in the army for 7 years and that he had received an honorable discharge; that he was 10 to 15 percent disabled, and that he knew the difference between truth and untruth, the inference being that he was telling the truth to the jury, or at least Dr. Hardy thought so. Again, we can't discount the fact that a medical psychiatrist possesses very impressive credentials academically and by training and experience, which would greatly enhance the reputation of the person he was speaking for.

The majority's citations of authority can readily be distinguished. *United States v. Benn,* 476 F.2d 1127 (D.C. Cir. 1972) actually supports my position. In *Benn,* a mentally *retarded* girl, 18 years of age, was raped. In order to determine her competency, the trial judge held a hearing *out of the presence of the jury,* at which the girl's father testified that her memory was at times inconsistent and admitted that she did fantasize but that her flights of fancy were always innocuous and she never totally fabricated anything. The victim was examined by a physician on the night of the alleged rape, but the doctor did not testify. In this case, even though there was testimony as to her memory impair-

ment and fantasies, corroborative testimony as to her mental condition was only admitted outside of the presence of the jury on the issue of her competence. However, in the subject case there was no organic mental disease or retardation, but merely nervousness and anxiety, and yet the majority would permit such testimony.

In *State v. Jensen*, 5 Wn. App. 636, 489 P.2d 1136 (1971), the defendant was convicted of committing indecent liberties with a *retarded child*. In *Jensen*, a teacher of the victim was permitted to testify to the effect that the complaining witness had not cheated in examinations and that she had not lied. There the defense directly put her credibility in issue when he testified that she was retarded and "'[t]he fact that any time you asked her a question she was not able to understand any of the meanings of anything you mentioned". Consequently, this case can readily be distinguished from the instant case on the basis the witness was retarded and the defense directly put her credibility in issue.

In *State v. Stamm*, 16 Wn. App. 603, 605, 559 P.2d 1 (1976), the trial court refused to permit the defendant to select a psychiatrist to perform a mental examination of the State's chief witness for the prosecution.

> We recognize that expert testimony as to the credibility of a witness is admissible if the mental condition of a prospective witness is questioned.

This case lends no support to the State.

*State v. Wyse*, 71 Wn.2d 434, 429 P.2d 121 (1967) involved the testimony of a 14–year–old *retarded girl*. Over objection, there was admitted into evidence a file of school records and reports made by social workers, teachers, psychologists and counselors.

The trial court instructed at page 435:

> It is not a defense to charges such as made here that the child alleged to be involved is mentally retarded, has told lies, or is generally of bad character. Evidence of her conduct at school and the *school records were admitted for a limited purpose only*. You may give this considera-

316

tion, if you wish, only on the question of the *competency* of [name omitted] as a witness. If you believe the testimony of this witness, then you should disregard all evidence of the school records or her conduct at school.

In *Wyse,* we had a *mentally retarded* witness (not a nervous witness) where school records were admitted only on the issue of competency to testify, under an appropriate instruction. No live witness was permitted to corroborate or enhance the child's testimony.

However, witness Bliss was not retarded; he had no organic injury to his brain; and he didn't suffer from fantasies or hallucinations. True, he was nervous and suffered from anxieties. From examining the record wherein he testified, once before the jury and once outside of the presence of the jury, Bliss demonstrated that his memory is more than adequate.

As witness Bliss' credibility was not put in issue in this case, Dr. Hardy's testimony was unnecessary and its admission constituted prejudicial error. I would reverse and remand for new trial.

ROSELLINI and WILLIAMS, JJ., concur with DORE, J.