214 So.2d 103 (1968)
The MASTAN COMPANY, Inc., Appellant,
v.
AMERICAN CUSTOM HOMES, INC., Appellee.
No. 68-17.
District Court of Appeal of Florida. Second District.
September 11, 1968.
Dennis J. Slater, Tampa, and Charles E. Miller, of Fowler, White, Collins, Gillen, Humkey & Trenam, St. Petersburg, for appellant.
L.C. Schowe, of Riley, Davis & Schowe, St. Petersburg, for appellee.
ALLEN, Judge.
The appellant, plaintiff below, appeals from the final judgment of the court below sitting without a jury. Appellee here was the defendant below.
In 1966 a suit was instituted by The Mastan Company, Inc. against American Custom Homes, Inc., to collect certain delinquent accounts owed by the appellee. The debt had been assigned to appellant, The Mastan Company, Inc., by the ABC Window Company of Tampa, Inc.
At the trial of this suit appellant had attempted to introduce certain business records pertaining to the debt through a witness, Mrs. Fulford. The appellee objected to Mrs. Fulford's testimony on the grounds that she was not the official custodian of the records and that she did not make the entries into the records. The trial court sustained appellee's objection and judgment was subsequently awarded to appellee.
*104 The appellant makes this point on appeal:
"Whether or not the court erred in sustaining defendant's objection to the introduction of certain business records by the plaintiff."
The appellee states its point in this manner:
"Whether one of three employee bookkeepers, who is neither the custodian, the supervisor, nor the employee who made all the bookkeeping entries, is qualified to lay a proper foundation for admission into evidence of business records under Florida Statute 92.36 [F.S.A.] Uniform Business Records as Evidence Act."
Section 92.36(2), Fla.Stats., F.S.A. states:
"A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."
Section 92.36(2) in effect provides that business records may be introduced in evidence if the custodian or other qualified witness testifies to their identity and the mode of their preparation, if they were made in the regular course of business at or near the time of the act, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify their admission.
The court, in this case, held that the records were not admissible.
Mrs. Fulford, one of the bookkeepers for appellant, as stated in the brief of appellee:
"* * * may have qualified the identity of the bookkeeping records, the mode of preparation and that they were made in the regular course of business at or near the time of the act, condition or event. But, Defendant-Appellee takes the position that Mrs. Fulford did not qualify herself within the ambit as `custdian or other qualified witness.' Why? First, she was one of three bookkeepers who did the posting and did not have personal knowledge of all the bookkeeping entries. Second, she was not the custodian of records. Third, it was not her responsibility to supervise keeping of the records for the purpose of maintaining accuracy and completeness."
The brief then continues as follows:
"Since Mrs. Fulford could not qualify as the custodian of records nor the bookkeeper who posted these records, the turning point in this appeal centers upon whether Mrs. Fulford comes within the definition of the words `qualified witness' on any other basis under the Uniform Business Records as Evidence Act. If an individual is neither the custodian of records nor the one who posted them what else is there? Defendant-Appellee urges that there is only one category remaining where Mrs. Fulford could qualify. If Mrs. Fulford were the general supervisor, or head bookkeeper, or office manager, she could vouch for the ledger entries and posting of accounts, because the same may be vouched for by the overall head under whose supervision the records are made and who vouches for them. Evans v. Boggs, [35 Tenn. App. 354] 245 S.W.2d 641 (Tenn. 1951)."
We have read the complete record and testimony in this case and we conclude that the lower court was correct in its *105 ruling that the business records were not properly authenticated for introduction in this case.
In Evans v. Boggs, supra, the Tennessee Court of Appeals stated (p. 652):
"Assignments 30 and 31 relate to the testimony of W.W. Crandell who made the audit for complainants. The first ground stated is that C.B. Larde assisted Crandell in making the audit but did not testify as to part he made and that under State ex rel. Stewart v. Follis, 140 Tenn. 513, 205 S.W. 444, where one of several auditors fails to testify as to his part, none of the entire audit is admissible. The record does not support this ground. To the contrary Crandell testified that he himself made the audit and the only thing Larde did was to assist him in compiling the report, a mere clerical task done under Crandell's supervision and checked by him."
Subsequently, the Court stated (p. 652):
"We think the record shows Crandell was a competent bookkeeper and capable of making an audit and that he able of making an audit and that the fact he is not a `certified public accountant' goes only to the weight and not to competency; that since he took his figures from the records of the oil mills and banks, which we have held were properly admitted in evidence, and from documentary evidence of the partnership and from some information obtained from complainants who testified in the case, and from certain admissions in the answer, the compilation of figures composing the audit is not subject to such objection."
Again in Evans v. Boggs, supra, the Court states (p. 650):
"For the same reasons, where the entries are made in the regular course of business by one or more bookkeepers, but under the general supervision of a head bookkeeper or cashier or office manager, it is not necessary to call the one who actually made the ledger entry, because the same may be vouched for by the overall head under whose supervision the records are made and who testifies from personal knowledge. Continental Nat. Bank v. First Nat. Bank, 108 Tenn. 374, 380-381, 68 S.W. 497; 20 Am.Jur. 921, sec. 1069.
"As to (b) supra, counsel for complainant introduced copies of the account books and proved they were correct copies, but in most instances failed to prove the correctness of the originals, although the witnesses were familiar with the books and records and testified as to their having been kept in the regular course of business.
"We think that where a witness is available who has personal knowledge of the correctness, he must testify to same even though they are entries in the regular course. If no witness is available who has personal knowledge of correctness, then upon accounting for the unavailability of such person, proof of the records having been kept in the regular course makes them admissible. Wigmore, 3d ed., secs. 1521, 1554; 20 Am.Jur. 1043 and note 6 citing Chaffee & Co. v. United States, 18 Wall. 516, 21 L.Ed. 908.
13 Fla.Jur. Evidence § 374 provides:
"In order to be admissible, entries in books must ordinarily have been made in the regular course of business, and as a part of the party's system of keeping his accounts. The person making the entries must be identified as one whose duty, employment, or custom it was to make them in the ordinary course of business. And the books themselves must be offered for the inspection of the court to determine whether they have been honestly and fairly kept. They are admitted as evidence only after a physical inspection of them by the court to ascertain the probability that they were fairly kept as contemporaneous *106 transactions, and have not been altered for ulterior purposes. If the books offered appear to have been erased in a material part, they will not be admitted unless the alteration is explained. In this regard, the court may take into consideration the fact that the first entries appear as fresh and legible as those dated and ostensibly entered several years later."
In Yates v. Helms, Fla.App. 1963, 154 So.2d 731, in an opinion written by Judge Germany, associate judge, for this court, it is stated:
"The memorandum sought to be introduced before the lower court was not made contemporaneously with the services performed but was an entry made by the bookkeeper from statements made to her by other employees. The Chancellor was correct in his ruling in excluding the memorandum on Section 92.37, Florida Statutes, F.S.A.
"In addition to this Section 92.37, Florida Statutes, the Legislature in 1949 passed a Uniform Business Records As Evidence Act, which is 92.36, Florida Statutes Annotated. Section 2, which is applicable to this appeal is as follows:
"`A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.'
"Although Section 92.36 Florida Statutes, F.S.A. was not argued to the trial court, Appellant now contends that if the memorandum was properly excluded under Chapter 92.37, it should have been admitted under Subsection 2 of Section 92.36. While this section is an extension of Section 92.37, to liberalize the rules as to the allowance of shop book memorandum, there is a limitation which makes it within the discretion of the court as to its admissibility, based on source of information and method and time of preparation. It has not been made to appear that the court abused its discretion in that there is adequate evidence to support the court's ruling and therefore the case is affirmed."
In Deutsch & Balicer, How to Prove a Prima Facie Case, p. 14 (1928), we find the following rule of law:
"Where one made an entry in the ordinary course of business, pursuant to a report of another, both must testify as to the entry and report before the entry may be admitted in evidence."
In support of this rule of law the treatise cites Mayor, Alderman, and Commonalty of City of New York v. Second Avenue Railroad Co., (1886) 102 N.Y. 572, 7 N.E. 905. The statement taken from this case is as follows:
"The other branch of the inquiry has not been very distinctly adjudicated in this state, although the admissibility of entries made under circumstances like those in this case was apparently approved in Payne v. Hodge, 71 N.Y. 598. We are of opinion that the rule as to the admissibility of memoranda may properly be extended so as to embrace the case before us. The case is of an account kept in the ordinary course of business, of laborers employed in the prosecution of work, based upon daily reports of foremen who had charge of the men, and who, in accordance with their duty, reported the time to another subordinate of the same common master, but of a higher grade, who, in time, also in accordance with his duty, entered the time as reported. We think entries so made with the evidence of the foremen that they made true reports, and of the person who made the entries that he correctly entered them, *107 are admissible. It is substantially by this method of accounts that business transactions in numerous cases are authenticated, and business could not be carried on and accounts kept in many cases, without great inconvenience, unless this method of keeping and proving accounts is sanctioned. In a business where many laborers are employed, the accounts must, in some cases, of necessity, be kept by a person not cognizant of the facts, and from reports made by others. The person in charge of the laborers knows the fact, but he may not have the skill, or, for other reasons it may be inconvenient that he should keep the account. It may be assumed that a system of accounts based upon substantially the same methods as the accounts in this case, is in accordance with the usages of business. In admitting an account verified as was the account here, there is little danger of mistake, and the admission of such an account as legal evidence is often necessary to prevent a failure of justice. We are of opinion, however, that it is a proper qualification of the rule admitting such evidence that the account must have been made in the ordinary course of business, and that it should not be extended so as to admit a mere private memorandum, not made in pursuance of any duty owing by the person making it, or when made upon information derived from another who made the communication casually and voluntarily, and not under the sanction of duty or other obligation. The case before us is within the qualification suggested. In Peck v. Valentine, 94 N.Y. 569, the memorandum there admitted was not an original memorandum, but a copy of a private memorandum made by an employe of the plaintiff for his own purposes and not in the course of his duty, or in the ordinary course of business. The original memorandum was delivered, by the one who made it, to the plaintiff, who lost it, but testified that the paper produced and received in evidence was a copy. The person who made the original memorandum was unable to verify the copy. The court held that the copy was improperly admitted in evidence. The decision in Peck v. Valentine rests upon quite different facts from those in this case."
This lays down a good rule to follow in the introduction of business records.
In Green v. City of Cleveland, Ohio App. 1948, 79 N.E.2d 676, the court held that the purpose intended to be served was to make admissible records which are made in the regular course of business, often times by several persons, concerning conditions and events occurring in the business of the one for whom the record is kept, without the necessity of examining the persons who actually created such record or participated in doing work reported, so long as it is produced by one who has custody of such record as a regular part of his work or supervision of its creation.
In Cantrill v. American Mail Line, 1953, 42 Wash.2d 590, 257 P.2d 179, 189, it is stated:
"Appellant next contends that, since no person who prepared the hospital record prior to the accident identified the record, that portion antedating the accident was inadmissible as hearsay.
"The uniform act was passed by the Legislature for the purpose (among others) of making evidence that would otherwise be hearsay competent evidence. Where (as here) the trial court is satisfied that sufficient testimony has been adduced regarding the manner in which certain records have been kept and that their identity has been properly established in compliance with the act, no objection on the ground of hearsay can be entertained. As applied to hospital records, compliance with the act obviates the necessity, expense, inconvenience and sometimes impossibility of calling as witnesses the attendants, nurses, physicians, X-ray technicians, laboratory *108 and other hospital employees who collaborated to make the hospital record of the patient. Weis v. Weis, 147 Ohio 416, 72 N.E.2d 245, 169 A.L.R. 668. It is not necessary to examine the person who actually created the record so long as it is produced by one who has the custody of the record as a regular part of his work or has supervision of its creation. Green v. City of Cleveland, Ohio App., 79 N.E.2d 676.
"In this state the ruling of the trial judge in admitting or excluding such records is given much weight and will not be reversed unless there has been a manifest abuse of discretion. See Choate v. Robertson, 31 Wash.2d 118, 195 P.2d 630; State v. Meyer, 37 Wash.2d 759, 226 P.2d 204; Morrison v. Nelson, 38 Wash.2d 649, 231 P.2d 335. Here there was no abuse of disadmitted."
In United States v. Mortimer, 118 F.2d 266 (2d Cir.1941) it was held that where a public accountant testified that he superintended the entire work of making charts based upon the public records; that the results demonstrated the fairness of methods used; that one assistant testified how record cards were made, the charts were sufficiently authenticated without calling all persons who participated in the work.
The Court stated (p. 269):
"But appellant argues most strenuously that all of Karcher's aides should have been called. That this is a purely formal objection is shown by the testimony obtained from the one aide who took the stand. He testified that he and another assistant had made up the record cards, which he produced, covering their abstracts from the tax records on over a thousand parcels. Thus the amenities were formally satisfied, but certainly appellant was not the gainer, if indeed, anyone was, by such routine testimony. Obviously the aides saw only part of the picture. The authenticity of the whole must depend upon Karcher's supervision and direction. His should therefore be the testimony upon which its evidential value rests. Karcher himself testified that he supervised the entire job, giving full time from November, 1934, until June or July, 1935, and then for various periods until the fall of 1937. First the arrears as shown by the company's own files were computed; then, since these were not complete, he directed the check from the tax records according to a plan which called for arrears of at least 30 days' duration, and resolved all doubtful questions in favor of defendants. We have seen that the results demonstrated the fairness of his method." (Emphasis added.)
We have gone over the record and the testimony of Doris Fulford, who was one of three bookkeepers employed by the defendant in this case. She testified that a particular sheet was a ledger card for posting charges and credits of the customer. She testified that a particular invoice showed goods were sold to the American Custom Homes and that the amount was "two seventy nine thirteen"; that another invoice showed an amount of "four sixty four." (While the question is not raised in this record, we notice that the witness practically invariably does not say "dollars and cents" but only the words, which causes some confusion as to the actual amount involved.)
On page 20 of the transcript the following testimony was adduced:
"Q. Now, going back, does it appear that any credits have been allocated to either this particular invoice or the last one you testified to?
"A. No, because the charge  I would say no.
"Q. In other words, they haven't been paid?

*109 "THE COURT: Do you know that of your own personal knowledge?
"THE WITNESS: I would say they haven't according to the way they have been posted.
"THE COURT: Do you know of your own personal knowledge?
"THE WITNESS: Not from my own personal knowledge, but from the posting here.
"Q. Do you post from time to time?
"A. Yes, uh-huh.
"Q. And it's possible that you did some or all of the posting on this?
"A. I could have done some of it. I won't say all of it, but I did most of the posting.
"Q. You did do most of the posting?
"A. Yes, sir.
"THE COURT: Who did this particular posting?
"THE WITNESS: Well, there is no way of telling. It could have been done by different people because they did have two or three girls that did posting.
"THE COURT: Under whose direction, if anyone, did they work?
"THE WITNESS: Well, whoever was the manager, I guess, of the place."
Again, on page 22, the witness testified:
"Q. Is there any indication that that has been paid?
"A. I don't know  I mean, see, to determine this balance, you would have to go back and 
"Q. Is there anything written up?
"A. Not for that amount. No, there isn't."
On page 27 of the record there is an objection to the introduction of these business records primarily because Mrs. Fulford testified that the invoices were posted by unknown persons. She could not identify which ones. Therefore, it was not within her personal knowledge whether or not they may or may not be correct.
Secondly, the records were not within her complete custody and control. The objection then goes on to read:
"* * * These records were in an office with three other  I believe, other ladies working, and she has testified that these records were kept by other people.
"She does not know. She did not testify the records were the full and complete records in connection with American Custom Homes. She stated: Apparently, it does not indicate the account has been paid. `Apparently' is not enough to indicate into evidence what the accounts indicate.
"Furthermore, she did not testify that this was solely her responsibility to determine the correctness. This may be simply the responsibility of somebody else who has not been identified and perhaps may not be present today to verify that they are true and complete records of their personal  own personal knowledge."
The trial judge at this time sustained the objections to the introduction of the records on the ground proper predicate had not been laid for the shop book rule.
Afterwards Mrs. Fulford was asked:
"Q. Mrs. Fulford, how many employees were working for the ABC Window Company at this time? Do you know?
"A. Do you mean in the office?
"Q. Yes, ma'am.
"A. Dorothy was a girl from St. Petersburg that was working at the time. She and I  and later on, *110 just a month or two before the place closed, there was another girl.
"Q. In other words, there were three girls, and you were one of them?
"A. Yes, uh-huh.
"* * *
"Q. Is there anyway that you could tell whether or not you typed this invoice or one of the other girls typed it?
"A. I can't say who typed it, if that is what you mean  no.
"Q. You could have typed it?
"A. Yes.
"Q. You did type a lot of them?
"A. Yes.
"Q. The same way with the posting of the accounts?
"A. Yes, sir.
"Q. Did you or did you not post accounts?
"A. I did post."
The court then asked the witness some questions as follows:
"Q. Under whose direction?
"A. I was the girl working in the office and it was my job to do it as bookkeeper.
"Q. What about the other two girls?
"A. Dorothy was bookkeeper too and the other girl was more or less general office  answering the phone, pricing, and occasionally, she would help type.
"Q. Two bookkeepers?
"A. Yes, sir.
"Q. Each independent from the other?
"A. Well, we both did the posting.
"Q. She wasn't your boss?
"A. No, sir.
"Q. And you weren't her boss?
"A. No, sir.
"Q. So neither one of you worked under the direction of anybody other than individually?
"A. Yes, sir.
"Q. Who kept the records  do you know?
"A. She and I did. They were kept in the office. She and I did all the book work.
"Q. But who had physical control of the records?
"A. Well, a copy of all the records like this  of the invoices, were forwarded to Miami to the home office, but we kept a copy here.
"Q. Who told you what to do and who told the other girl?
"A. When we were hired, we were hired as bookkeepers, and this is part of the job.
"Q. And whose job or position was it to see that these things were done and done right?
"A. Well, whoever was the manager of the office. I mean, in other words, we work in the office and had an office manager."
Subsequent to this testimony the plaintiff rested and the defendant withdrew its counterclaim.
The office manager could apparently have authenticated the business records, or, if there was a head bookkeeper or accountant who was over the bookkeepers and the proper predicate was laid, the business records *111 or accounts could have properly been received.
The one bookkeeper who testified in this case stated that the office manager was over the bookkeepers but there was no head bookkeeper.
The record should have been presented to the trial court for his perusal. He had broad discretion in determining if the evidence adduced laid the proper foundation for reception under § 92.36(2), Fla. Stats., F.S.A.
We conclude from the testimony adduced in this case that the lower court was correct in refusing to admit the business records.
Affirmed.
LILES, C.J., and HOBSON, J., concur.