363 So.2d 49 (1978)
LEA INDUSTRIES, INC., a Corporation, Appellant,
v.
RAELYN INTERNATIONAL, INC., a Florida Corporation, Wendell E. Ray and Linda Ray, Appellees.
No. 77-2276.
District Court of Appeal of Florida, Third District.
October 10, 1978.
*50 Kreeger & Kreeger and Judith L. Kreeger, Miami, for appellant.
Levine, Reckson & Reed and Allen P. Reed, Miami, for appellees.
Before PEARSON, HENDRY and KEHOE,[*] JJ.
PER CURIAM.
The following opinion and judgment by NATHAN, J., prepared prior to his death on August 10, 1978, is hereby adopted by a panel of the Court as the opinion and judgment of this Court.
NATHAN, Judge.
This is an appeal by the plaintiff from a final judgment for defendants rendered after a non-jury trial in an action for damages for non-payment of accounts due. The basic issues concern whether or not a contract of guarantee had been modified or revoked by subsequent writings and whether or not the trial court erred in excluding from evidence various documents and testimony *51 proffered by plaintiff. We find prejudicial error in the decision below and reverse the judgment of the trial court.
The defendants in the trial court were Raelyn International, Inc. [Raelyn], Wendell E. Ray, Raelyn's organizer and original president, and Linda Ray, Wendell's wife. Raelyn went into business in Florida in late 1972 as a wholesale furniture distributing company. It purchased some of its merchandise from LEA Industries, Inc. [LEA], whose home offices were in Virginia. In order to induce LEA to extend credit to Raelyn, Wendell and Linda Ray, as individuals, signed the following contract of guarantee on a form submitted by defendants themselves, in November of 1972:
LEA INDUSTRIES, INC.
RICHMOND, VA.
Gentlemen:
For value received, and in consideration of the credit which you may hereafter extend, I/We hereby jointly, severally, and unconditionally guarantee payment when due at your office in RICHMOND, VA. of any and all present or future indebtedness owed by RAELYN INTERNATIONAL, INC., of Hialeah, Florida to you and I/We hereby agree punctually to pay such indebtedness if default in the payment thereof be made by aforesaid RAELYN INTERNATIONAL, INC., of Hialeah, Florida.
This is intended as a continuing guarantee applying to all present and future indebtedness, howsoever arising, and to all sales and advances made by you to RAELYN INTERNATIONAL, INC., of Hialeah, Florida until the same is revoked by the undersigned in writing and delivered to RICHMOND, VA., at its offices in ____, by registered or certified mail. The signed receipt will acknowledge the revocation of the personal guarantee on all shipments after date of receipt of such revocation.
Witness my/our hands and Seals this 15th day of Nov. 1972.
On August 24, 1973, a letter was sent by Raelyn, per Wendell Ray, as president, to LEA, which included, in pertinent part, the following:
"At the present time, however, please hold up any pending orders until they are personally released by me, as I wish to review our entire situation as far as merchandise is concerned and go over it with Mr. Lou Adler[**] and then make plans for the future." [Emphasis added.]
LEA responded to Raelyn in a letter dated September 4, 1973, which stated:
"As stated in your letter, all pending orders are being held and no shipments will be made until we receive notification from you." [Emphasis added.]
Raelyn, through its president, Wendell Ray, again wrote LEA on September 10, 1973, noting: "As stated before, make absolutely no shipments without my personal authorization." [Emphasis added.]
In mid 1974, personal problems caused Ray to limit his active participation in Raelyn's business. Ownership of Raelyn was transferred to others in October, 1974. It appears that the business effectively ceased to function within a short time thereafter.
Alleging that furniture was ordered by Raelyn and that the goods, though delivered F.O.B. LEA's factory, as ordered, were never paid for, LEA filed suit against Raelyn for damages on an account stated, on an open account, and for goods sold and delivered in two transactions in August and September, 1974; and against Wendell and Linda Ray on their guarantee.
At the non-jury trial which ensued, the court excluded the proffered testimony of one of plaintiff's witnesses which showed that an oral order had been placed by Wendell Ray and an associate with LEA's representative at a trade show in July, 1974. Ray denied having placed the order. The court also excluded the order forms written by LEA's salesman at the time the alleged oral order was placed, as well as invoices, acknowledgments and numerous shipping documents proffered by LEA. The apparent *52 bases for exclusion were that the parol evidence rule and the statute of frauds barred their admission. LEA's computerized records of Raelyn's account were excluded on the theory that LEA's witness was not a proper custodian of the records.[1]
The record before us contains uncontradicted evidence of some payment sent to LEA by Raelyn, to wit, a check dated October 8, 1974, which was dishonored because of insufficient funds. The trial court nevertheless entered a final judgment for all defendants.
Plaintiff specifies seven points on appeal, all of which devolve around two basic issues: whether plaintiff's ability to prove Raelyn's liability was prejudiced by erroneous evidentiary rulings, and whether the guarantors' liability was discharged by revocation or modification of the contract of guarantee. Therefore we will treat these central issues without specifically addressing each point on appeal.
We find that the trial court committed reversible error in excluding various documents and testimony proffered by LEA. Defendants' contentions that the parol evidence rule is applicable to the facts at bar are fallacious and without merit. As to the contention that the statute of frauds bars admission of plaintiff's evidence of goods ordered and delivered, we note that plaintiff produced a signed check on Raelyn's account, made out to LEA, dated October 8, 1974, marked for Invoice # 88822 (one of the invoices Raelyn sought to have admitted). The check had been accepted by LEA and deposited to its account in a Virginia bank, but was returned for insufficient funds. This evidence alone was enough to take at least part of the contract out of the statute of frauds, for a contract which is otherwise valid is enforceable "with respect to goods for which payment has been made and accepted or which have been received and accepted." Section 672.2-201(3)(c), Florida Statutes [1977].
Moreover, LEA proffered copies of acknowledgements which had been sent to Raelyn to which Raelyn offered no evidence of objection having been made at any time. This too removed the contract from the reach of the statute of frauds. Section 672.2-201(2) and comment 3 thereto, Florida Statutes [1977]. Thus defendants' objections to the admission of evidence because of the statute of frauds were groundless.
As to the assertion that LEA's witness was not a proper records' custodian and therefore the computer printouts he presented could not be admitted, the record reveals that the witness was properly identified as the man who had custody of the records as a regular part of his work, that he identified the persons making the entries which were transcribed into computer language as persons who did so in the ordinary course of business, and that he testified that the records were created substantially contemporaneously with the respective transactions to which they related.[2] However, it lies within the trial court's discretion to determine whether admission of such business records is justified. Because we perceive no necessarily reversible abuse of discretion, we decline to find reversible error on this point. Section 92.36(2), Florida Statutes [1977]. See generally Mastan Company v. American Custom Homes, Inc., 214 So.2d 103 (Fla. 2d DCA 1968).
Since plaintiff's right to recover against any of the three defendants depends upon proof of delivery of ordered merchandise for which payment was not completed, the trial court's errors in refusing to admit much of the evidence upon which such proof was predicated was patently prejudicial and requires reversal.
Plaintiff's right to recover against Wendell and Linda Ray as individual guarantors *53 depends first on proof of Raelyn's liability and second on a determination that the guarantee was neither revoked nor modified sufficiently to relieve the guarantors of secondary liability. Defendants Wendell and Linda Ray contend that the letters exchanged between the parties in August and September of 1973 constituted just such relief from liability. They argue that this correspondence modified what had been an unconditional guarantee into "a form of conditional guarantee" requiring prior approval of shipments by Mr. Ray before liability could attach under the guarantee.
The contract of guarantee was submitted by defendants on a form prepared by them. In such a situation, the guarantee is to be construed against the guarantor. Taran v. Sea Coast Appliance Distributors, Inc., 164 So.2d 274 (Fla. 3d DCA 1964).
By its terms, the guarantee is an unconditional and continuing one which could be revoked only by the means specified therein, i.e., by the returned receipt of a certified or registered letter. No revocation occurred. Was the absolute guarantee so modified by the later correspondence as to relieve the guarantors of their joint and several liability? We think not.
The letters were signed by Wendell Ray in his capacity as president of Raelyn. His agency status was indicated on both letters by the typewritten line beneath his handwritten signature, Wendell E. Ray, President. The guarantee was signed by both Wendell and Linda Ray in individual capacities. Moreover, it is clear that the letters referred to orders pending at the time they were written, not to orders as yet uncontemplated at the time of the exchange of correspondence. The record reveals no disclaimer of responsibility under the guarantee until the instant suit was filed. See generally Frell v. Dumont-Florida, Inc., 114 So.2d 311 (Fla. 3d DCA 1959). The later correspondence did not modify the original, absolute guarantee.
Where agreements are unambiguous, they must be enforced according to their terms:
"A continuing guaranty covers all transactions, including those arising in the future, which are within the description or contemplation of the agreement. If a guaranty is not ambiguous and is clearly a continuing one, it will, or course, be construed and treated accordingly.
* * * * * *
Courts have universally held that a contract of guarantee which provides that it is to run until further notice remains in force until revoked by the guarantor." (Citations omitted.)
Bryant v. Food Machinery and Chemical Corporation Niagara Chemical Division, 130 So.2d 132 (Fla. 3d DCA 1961). Since the evidence produced by defendants did not show that the original guarantee was modified, the guarantors remain jointly and severally liable on their individual guarantees.
The judgment appealed from is reversed.
NOTES
[*] Judge Kehoe participated in the decision in this case but did not hear oral argument.
[**] Adler was a sales representative of LEA.
[1] Another piece of evidence, a proffered deposition, was admitted only in part. We do not treat plaintiff's argument that it was error to fail to admit the deposition in its entirety because, in light of our other holdings, it is unnecessary to a disposition of this cause.
[2] The witness testified that according to LEA policy, the longest allowable time lag between occurrence of a transaction and its computerized recordation was forty-eight hours.