PER CURIAM.
Appellant, J.R. Sales, Inc., seeks review of a final order entered by the Department of Agriculture and Consumer Services directing it to pay appellee, Earl Dicks, the additional sum of $5,576.00 for watermelons it received in 1984. We reverse.
Dicks filed a complaint with the Department of Agriculture and Consumer Services alleging that Carr Hussey, corporate representative, promised to buy all of his medium and large gray watermelons at 3.5 and 4.0 cents per pound respectively, and that between June 21 and July 2, 1984, Hussey harvested both gray and Jubilee watermelons for which he paid a substantially lower price. In its response, J.R. Sales, Inc. alleged that there was no agreement to purchase watermelons at any price while simultaneously contending that it agreed to purchase the watermelons at current market price based on the price that it could resell the produce.
A formal administrative hearing was held, at which both parties agreed that the only dispute to be resolved was the price of the watermelons. The parties developed their cases accordingly, and from the presentation of their evidence, the following facts were revealed.
Dicks is a Lake City farmer who grew watermelons for commercial sale during the summer of 1984. He was unsuccessful in finding a buyer for his crop, and in the latter part of June, he sought the assistance of another farmer, Doyle Ottinger, who introduced him to Carr Hussey, President of J.R. Sales, Inc., on June 20, 1984. Hussey resides in Maine and has the corporate duty of purchasing watermelons in Florida and other states and delivering them to merchants in New York, New England, and Canada.
According to Dicks, during the June 20th meeting, Hussey promised to buy all of his medium and large gray watermelons at 3.5 and 4.0 cents per pound respectively but *368 did not commit himself as to the Jubilees. According to Hussey, he told Dicks that he was unaware of any market for the watermelon crop but that if he located one, he would pay appellee fair market value which he established on a daily basis. He explained that he established the market price each day by calling his customers in New York and New England to find out what they were willing to pay him for watermelons on that day.
Thereafter Hussey purchased medium and large gray watermelons from appellee between June 22,1984 and July 2,1984 at a price of 2.5-3.0 cents per pound for medium grays and 3.0-3.5 cents per pound for large grays. On June 22, he paid appellee 3.0 and 3.5 cents per pound for medium and large grays, respectively; on June 23, 3.0 cents for medium grays; on June 24, 3.0 for large grays; on June 25, 3.5 for large grays; and on July 2, 2.5 and 3.0 for medium and large grays, respectively. During this period in June, Hussey purchased gray watermelons at the same price from another farmer whose watermelon field was about ten miles from appellee’s. On June 28, Hussey purchased large Jubilees from appellee at 3.0 cents per pound.
Hussey attributed the variation in the price to several factors, the most important one being the deadline date for delivering the watermelons to his northeastern markets in time for purchase by retail customers prior to July 4th. Due to the distance of his chain store markets from the place of harvest and their warehouse storage procedures, any watermelons loaded after June 26-28 could not be delivered in time for the 4th of July holiday. A substantial portion of Dicks’ watermelons did not reach their destination in time for the 4th of July market.
Sharod Keen, a competitor of Hussey’s, purchased medium and large Jubilee, gray, and crimson watermelons during this same time period at a cost of 3.5-4.0 cents and 3.5-4.5 cents per pound for medium and large watermelons, respectively. Keen’s markets included Florida, Maine, Wisconsin, Illinois, and Ohio, with Florida being the most prominent market. He did not specify which markets received his watermelons on the dates in question.
The hearing officer refused to admit in evidence an excerpt from a report of the Florida Livestock Reporting Service showing the average value per cwt for fresh market sales of watermelons for crop years 1979-80 through 1983-84.
In his recommended order, the hearing officer concluded that appellee received fair market value for his watermelons based on the markets available to Hussey and the prices he paid to other farmers in the relevant time period. The hearing officer implicitly rejected appellee’s statement that Hussey had agreed to pay him a fixed price for his watermelons, and he also rejected Sherod Keen’s testimony on the ground that his markets were not sufficiently relevant to those of Hussey. The hearing officer also concluded that even if appellee’s allegations were found to be factually correct, he could not prevail because of the statute of frauds. He recommended that appellee’s claim of underpayment be denied.
In its final order, the Department of Agriculture and Consumer Services disagreed with the hearing officer’s recommendation and directed J.R. Sales, Inc. to pay Dicks $5,576.00. The department concluded that the hearing officer had erred in his interpretation of the statute of frauds, in his refusal to admit in evidence the market report, and in rejecting Keen’s testimony on the ground that his markets were different from Hussey’s because “[tjhis is a distinction without a difference since both watermelon buyers were buying melons at the same f.o.b. shipping point market price without regards to where they were being sold.”
The sole issue before the hearing officer was the price of the watermelons. Dicks testified that Hussey promised to pay him a set price, whereas Hussey testified that he promised to pay Dicks fair market value which he established on a daily basis by calling his northeastern customers early each morning. Conflicts in the testimony were resolved in favor of Hussey, and the effect of the hearing officer’s finding that *369 Hussey promised to pay fair market value, taking into account his own northeastern markets, was to necessarily render the market report and Keen’s testimony irrelevant. In essence, the parties themselves negotiated the method of determining the price for the watermelons, and this method was tied specifically to Hussey’s markets.
The market report and Keen’s testimony were further irrelevant to determine market value with respect to the seller (Dicks) because he testified that he had only one offer to buy his watermelons and that offer came before his encounter with Hussey very late in the watermelon season. It was Dicks who sought out Hussey, and the hearing officer found that Hussey told Dicks that he was unaware of any market for his watermelon crop but that if he could find one, he would pay him fair market value in accordance with his northeastern markets. Keen testified that he did not offer to buy Dicks’ watermelons, and there was no evidence suggesting that Dicks could have sold his watermelons to anyone else that late in the season.
Hussey testified that in June 1984, he paid Dicks the same price for his watermelons as he did another farmer in the same area. He further explained that the drop in price was due to the fact that the watermelons did not reach his northeastern customers in time for the 4th of July sales. Hussey also testified that his profit from the sale of Dicks’ watermelons averaged one-fourth of a cent to one cent per pound. There was no testimony suggesting that his profit was not commensurate with payment to Dicks of fair market value. These facts constitute competent substantial evidence to support the hearing officer’s ultimate finding that Dicks was paid fair market value in accordance with the agreement of the parties based on Hussey's individual markets. The hearing officer’s findings of fact must prevail if supported by competent substantial evidence. Forehand v. School Bd. of Washington County, 481 So.2d 953 (Fla. 1st DCA 1986).
By requesting the hearing officer to resolve the price dispute, the parties implicitly presumed the existence of a valid oral contract, especially in light of the evidence presented; i.e., testimony from the parties as to their negotiations regarding price. Assuming, as we must, the existence of an oral contract, we agree with the department that the hearing officer erred in concluding that its enforcement was prohibited by the statute of frauds. Neither party disputes the fact that Hussey harvested and sold a specified quantity of Dicks’ watermelons, and Dicks does not allege that Hussey’s conduct was unauthorized, only that he was underpaid. These facts are sufficient to satisfy the statutory exceptions to the writing requirement. Section 672.201(3), Florida Statutes (1985); Lea Industries, Inc. v. Raelyn Intern., Inc., 363 So.2d 49 (Fla. 3d DCA 1978).
Accordingly, the department’s final order is REVERSED.
• SMITH, C.J., and WENTWORTH and JOANOS, JJ., concur.